```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA
                      Civil No. 08-14(DSD/JJK)
```

David A. Kreitzer,

        Plaintiff,

v.                                                          **ORDER**

Xethanol Corporation,

        Defendant.

     James H. Kaster, Esq., David E. Schleisinger, Esq. and
     Nichols Kaster, PLLP, 80 South Eighth Street, Suite 4600,
     Minneapolis, MN 55402, counsel for plaintiff.

     Wallace G. Hilke, Esq. and Lindquist & Vennum, PLLP, 80
     South Eighth Street, Suite 4200, Minneapolis, MN 55402
     and Jeffrey L. Mapen, Esq., S. Wade Malone, Esq. and
     Nelson, Mullins, Riley & Scarborough, LLP, 201 17th
     Street N.W., Suite 1700, Atlanta, GA 30363, counsel for
     defendant.

This matter is before the court on defendant Xethanol Corporation's ("Xethanol") motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

This federal diversity action arises out of an employment agreement between plaintiff David A. Kreitzer ("Kreitzer") and Xethanol. Xethanol specializes in the production of ethanol and ethanol-related products. In March 2005, Kreitzer began discussing

a job opportunity with Chris Taylor ("Taylor"), Xethanol's then chief executive officer.  Following up on this conversation, Xethanol's chief financial officer Larry Bellone ("Bellone") emailed Kreitzer a summary of the employment offer on March 3, 2005, proposing a $100,000 annual salary and a signing bonus "of 50,000 warrants to purchase shares of Xethanol common [stock] at a price per share of $4.00 any time during the 3 year period from the date of the warrants." (Pl.'s Ex. 1.)  According to Kreitzer, at a meeting on March 15, 2005, he informed Taylor and Bellone that he could not afford to purchase the signing bonus shares.  (Pl.'s Ex. 9 at 52-53.)  Taylor allegedly assured Kreitzer that he would be able to "flip" the shares through a cashless transaction by using a broker to purchase and sell them simultaneously.[1]  (Id. at 53.) On April 6, 2005, Xethanol sent Kreitzer a written employment offer stating that "[u]pon acceptance of this offer, as a signing bonus, the Company will issue to you options to purchase 50,000 shares of Xethanol common stock at an exercise price of $4.00 per share. These options will be exercisable any time during the three year period following issuance."  (Pl.'s Ex. 3.)  Kreitzer signed and returned the agreement that day.

On April 5, 2006, Kreitzer informed Bellone that he had retained stock broker Mason Matschke ("Matschke") and wanted to

---

[1] Taylor and Bellone do not recall discussing with Kreitzer the possibility of a cashless transaction.  (Pl.'s Ex. 10 at 29; Ex. 11 at 28-30.)

exercise his stock options through a cashless transaction.  In an April 11, 2006, email, Bellone told Kreitzer that the warrants were not yet registered.  Therefore, Kreitzer could purchase the shares but he could not sell them.[2]  According to Kreitzer, this was the first time anyone at Xethanol informed him that the shares were not registered.  Throughout the spring and summer of 2006, Kreitzer and Matschke unsuccessfully urged Bellone to complete the necessary paperwork to register the shares.  Kreitzer resigned from his job at Xethanol on November 7, 2006.  At that time, the shares remained unregistered.

On December 13, 2007, Kreitzer filed a five-count complaint against Xethanol in Minnesota state court, asserting breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraudulent misrepresentation and negligent misrepresentation.  Xethanol removed the action to this court on January 2, 2008, and now moves for summary judgment.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[2] A company that intends to sell its stock must file a registration statement with the Securities Exchange Commission. See 15 U.S.C. § 77e.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

**II.  Breach of Contract**

Kreitzer maintains that Xethanol breached the employment agreement by preventing him from exercising his signing bonus shares through a cashless transaction.  Xethanol argues that it did

not breach the agreement because Kreitzer could have purchased the shares at any time and the parol evidence rule bars Kreitzer from introducing evidence of any alleged prior oral agreement.

The parol evidence rule prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements to vary, contradict or alter the meaning of a contract when the parties have reduced their agreement to an unambiguous, integrated writing. See Alpha Real Estate Co. v. Delta Dental Plan, 664 N.W.2d 303, 312 (Minn. 2003) (quoting Hruska v. Chandler Assocs., Inc., 372 N.W.2d 709, 713 (Minn. 1985)).  Where a written agreement is ambiguous or incomplete, however, evidence of prior or contemporaneous oral agreements tending to establish the intent of the parties is admissible.  Id. (quoting Gutierrez v. Red River Distrib., Inc., 523 N.W.2d 907, 908 (Minn. 1994)).

**A.   Integration**

Kreitzer first argues that the agreement is not fully integrated.  A written agreement is fully integrated when the parties intend the writing to be a complete and exclusive statement of the terms of their agreement.  See Restatement (Second) of Contracts § 210 (2008); see also Taylor v. More, 263 N.W. 537, 539 (Minn. 1935) ("If [the agreement] imports on its face to be a complete expression of the whole agreement ... it is to be presumed that the parties ... introduced into it every material item and term."). A determination of whether a written agreement is fully

integrated is "not made solely by an inspection of the writing itself."  See Alpha Real Estate Co., 664 N.W.2d at 312 (quoting Bussard v. Coll. of St. Thomas, Inc., 200 N.W.2d 155, 161 (Minn. 1972)).  Rather, the "writing must be read in light of the situation of the parties, the subject matter and purposes of the transaction, and like attendant circumstances."  Id.

Kreitzer contends that the absence of a merger clause establishes that the agreement was not fully integrated.[3]  A merger clause is a written statement that the contract contains the entire agreement between the parties and that all prior negotiations and agreements are merged into that agreement.  See 29A Am. Jur. 2d Evidence § 1107 (2008); see also Alpha Real Estate Co., 664 N.W.2d at 312 (merger clause establishes that parties intended writing to be an integration of agreement).  The absence of a merger clause, however, does not necessarily permit consideration of parol evidence.  See Minn. Teamsters Pub. & Law Enforcement Employees Union v. County of St. Louis, 726 N.W.2d 843, 848 (Minn. Ct. App. 2007); see also 29A Am. Jur. 2d Evidence § 1107 (2008) ("Presence of integration clause makes the final written agreement no more integrated than does the act of embodying the complete terms into the writing.")

---

[3]   The written employment offer noted that it "confirm[ed] certain terms and conditions of [Xethanol's] offer for employment." (Pl.'s Ex. 3.)

Here, the agreement governed the terms of Kreitzer's employment at Xethanol, specifying the title of his new position, the amount of his salary, his payment schedule, his eligibility for discretionary bonuses, the signing bonus, his ability to enroll in the company sponsored healthcare plan, certain obligations Kreitzer owed to his former employer and nondisclosure provisions upon termination of Kreitzer's employment. (Pl.'s Ex. E.)  This level of detail indicates that the agreement was fully integrated.  See Tuaolo v. Want Some Weather Inc., Nos. A07-2139, A08-0014, A08-0044, 2008 WL 5136614, at *3 (Minn. Ct. App. Dec. 9, 2008) (agreement integrated despite lack of merger clause because sufficiently detailed).

Nevertheless, Kreitzer also maintains that the absence of legal counsel precludes a finding of integration.  The terms of the agreement, however, were detailed and clear, and Kreitzer accepted the offer without requesting any modifications.  Cf. Cers v. Schmitz, No. C5-01-882, 2002 WL 47784, at *4 (Minn. Ct. App. Jan. 15, 2002) (lack of representation only one factor in assessing integration).  Therefore, the court determines that the agreement was fully integrated and parol evidence is inadmissible to alter or modify its terms unless the terms are ambiguous.

**B.   Ambiguity**

Kreitzer argues that the agreement is ambiguous because it neither specifies nor limits how he could exercise the stock

options.  According to Kreitzer, there are at least three methods of exercising stock options: paying cash, swapping company stock or engaging in a cashless transaction.  (Pl.'s Ex. E.)  Kreitzer contends that the agreement's use of the word "exercise" entitled him to a cashless transaction.  Xethanol maintains that the agreement unambiguously provided Kreitzer with the right only to purchase the shares.

A contract is ambiguous when "the language used is reasonably susceptible to more than one meaning."  See Blattner v. Forster, 322 N.W.2d 319, 321 (Minn. 1982) (citation omitted).  Whether a contract is ambiguous is a legal question to be determined by the court.  Id.  A court may consider acts in performance of a contract to determine its meaning and ascertain the parties' intent.  See Leslie v. Minneapolis Teachers Ret. Fund Ass'n, 16 N.W.2d 313, 315-16 (Minn. 1944); see also Transp. Indem. Co. v. Dahlen Transp. Inc., 161 N.W.2d 546, 549 (Minn. 1968); Cut Price Super Mkts. v. Kingpin Foods, Inc., 98 N.W.2d 257, 268 (Minn. 1959).

In this case, the employment agreement did not contemplate Kreitzer's sale of the shares or a cashless transaction.  Rather, the agreement's operative language gave Kreitzer the option "to purchase" the shares.  The terms "exercise price" and "exercisable" must be interpreted in light of this language, which indicates that Kreitzer's rights were limited to the right to purchase the shares. See Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc., 666

N.W.2d 320, 324 (Minn. 2003) ("Intent is ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which words and phrases are given a meaning in accordance with the obvious purpose of the contract." (citation omitted)). Moreover, the parties' subsequent conduct supports this interpretation. Kreitzer expressed his desire for a cashless transaction in his April 5, 2006, email, and Bellone responded that such a transaction was impossible because the shares were not registered. Thereafter, Bellone did not register the shares despite Kreitzer and Matschke's entreaties. These actions do not evince the parties' mutual intent to guarantee Kreitzer's right to a cashless transaction. Accordingly, the court determines that the term "exercise" is unambiguous, and the agreement guaranteed only Kreitzer's right to purchase the shares.

Anticipating this conclusion, Kreitzer argues that the parties modified the agreement to assure his right to a cashless transaction. A court may consider evidence of subsequent oral modifications to a written contract. Sokol & Assocs., Inc. v. Techsonic Indus., Inc., 495 F.3d 605, 610 (8th Cir. 2007) (citing Larson v. Hill's Heating & Refrig. of Bemidji, 400 N.W.2d 777, 781 (Minn. Ct. App. 1987)). However, "allegations of modifications inconsistent with the written terms of a contract are subject to 'rigorous examination.'" Id. at 610-11 (quoting Bolander v.

Bolander, 703 N.W.2d 529, 541-42 (Minn. Ct. App. 2005)). In other words, such modifications must be shown by clear and convincing evidence. Bolander, 703 N.W.2d at 542 (citing Dwyer v. Ill. Oil Co., 252 N.W. 837 (Minn. 1934)). Here, no evidence supports a modification of the agreement to guarantee Kreitzer's right to a cashless transaction. Accordingly, summary judgment on Kreitzer's breach of contract claim is warranted.

**III. Implied Covenant of Good Faith and Fair Dealing**

Kreitzer claims that Xethanol breached the agreement's implied covenant of good faith and fair dealing by refusing to file the registration form that would have allowed him to simultaneously purchase and sell his shares. An implied covenant of good faith and fair dealing prohibits one party from unjustifiably hindering the other party's performance of a contract. In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995). Minnesota courts, however, have not extended this doctrine to employment agreements. See Poff v. W. Nat. Mut. Ins. Co., 13 F.3d 1189, 1191 (8th Cir. 1994) ("The Minnesota Supreme Court has squarely held that there is no implied covenant of good faith and fair dealing in Minnesota employment contracts."); Hunt v. IBM Mid Am. Employees Fed. Credit Union, 384 N.W.2d 853, 858 (Minn. 1986) ("We have not read an implied covenant of good faith and fair dealing into employment contracts.") Therefore, the court determines that the employment agreement did not include a covenant

10

of good faith and fair dealing and Kreitzer's claim fails as a matter of law.

## IV. Promissory Estoppel, Fraudulent Misrepresentation and Negligent Misrepresentation

Kreitzer asserts promissory estoppel, fraudulent misrepresentation and negligent misrepresentation claims on the basis that Taylor knew that Kreitzer's signing bonus shares were not registered but nevertheless assured him he could engage in a cashless transaction. In order to succeed on these claims, Kreitzer must submit evidence of reliance damages. See Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn. 2007) (fraudulent misrepresentation requires proof of reliance damages); Martens v. Minn. Min. & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (promissory estoppel claim requires proof of reliance damages); Smith v. Brutger Cos., 569 N.W.2d 408, 414 n.3 (Minn. 1997) (negligent misrepresentation claim requires proof of reliance damages). As a general rule, such damages are measured by a plaintiff's out-of-pocket loss. See Lewis v. Citizens Agency of Madelia, Inc., 235 N.W.2d 831, 835 (Minn. 1975). A court determines out-of-pocket loss by measuring the difference between "what plaintiff parted with and what he received." Id. Thus, "the out-of-pocket rule assumes that plaintiff received something from defendant that was less than what plaintiff anticipated receiving." See Autrey v. Trkla, 350 N.W.2d 409, 412 (Minn. Ct. App. 1984).

Kreitzer argues that he suffered damages due to Taylor's alleged misrepresentation because he was unable to conduct the cashless transaction and that he is entitled to the difference between the market price and the exercise price on the 50,000 shares. Such damages are expectation damages that do not ordinarily satisfy the out-of-pocket rule. See Wilhelm Lubrication Co. v. Brattrud, 268 N.W. 634, 636-37 (Minn. 1936) (expectation damages place plaintiff in same position as if breaching party had complied with contract); see also 22 Am. Jur. 2d Damages § 46 (2008). Minnesota courts, however, recognize exceptions to the out-of-pocket rule where strict application of the rule may not return the plaintiff to the status quo. See B.F. Goodrich Co. v. Mesabi Tire Co., 430 N.W.2d 180, 183 (Minn. 1988); Jensen v. Peterson, 264 N.W.2d 139, 143 (Minn. 1978). In such cases, the plaintiff may recover for any economic injury that is the direct and natural consequence of having acted in reliance on the misrepresentation. See Lewis, 235 N.W.2d at 835-36 (expectation damages awarded because loss suffered was expected life insurance proceeds not premiums already paid). Exceptions to the out-of-pocket rule have been allowed only where the defendant's misrepresentation prevents the plaintiff from taking measures to protect the value of property he already owned. Compare B.F. Goodrich Co., 430 N.W.2d at 183 (exception applies when misrepresentation caused plaintiff to lose established business),

and Hughes v. Sinclair Mktg. Inc., 389 N.W.2d 194, 199 (Minn. 1986) (same), and Sports Page, Inc. v. First Union Mgmt., Inc., 438 N.W.2d 428, 432 (Minn. Ct. App. 1989) (same), with Butler Gen. Store, Inc. v. Binger, No. C3-93-817, 1994 WL 6854, at *3 (Minn. Ct. App. Jan. 11, 1994) (expectation damages not allowed when alleged misrepresentation did not harm preexisting business). See generally Johnson Bldg. Co. v. River Bluff Dev. Co., 374 N.W.2d 187, 196 (Minn. Ct. App. 1985) (narrowly construing exception to out-of-pocket rule). Kreitzer's claim does not fall within this exception. Accordingly, the court determines that Kreitzer has not established reliance damages and summary judgment is warranted on these claims.

## CONCLUSION

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 40] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   January 16, 2009

                                                s/David S. Doty  
                                                David S. Doty, Judge  
                                                United States District Court